UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA        *    Case No. 21-CR-265(PKC)
                                *
                                *    Brooklyn, New York
                                *    July 30, 2021
        v.                      *
                                *
KUANG ZEBIN,                    *
                                *
            Defendant.          *
                                *
*  *  *  *  *  *  *  *  *  *  *  *  *  *

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        MATTHEW HAGGANS, ESQ.
                           Asst. United States Attorney
                           United States Attorney's Office
                           271 Cadman Plaza
                           Brooklyn, NY 11201


For the Defendant:         MICHAEL WALSH, ESQ.
                           Dimidchik Law Firm
                           136-18 39th Avenue
                           Queens, NY  11354




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 2:07 p.m.)

2              THE CLERK:  We're now on the record.  This is an

3      arraignment in USA v. Kuang Zebin, 21-CR-265.

4              Counsel, please state your appearances, starting

5      with the government.

6              MR. HAGGANS:  Good afternoon, Your Honor.  Matthew

7      Haggans for the United States.

8              THE COURT:  Good afternoon.

9              MR. WALSH:  Good afternoon, Your Honor.  Michael

10     Walsh from Chicago on behalf of Mr. Kuang.

11             THE COURT:  Good afternoon, and good afternoon, Mr.

12     Kuang.  Can you hear me, Mr. Kuang?

13             THE DEFENDANT:  Yeah.  Yeah, I can hear you.

14             MR. WALSH:  Judge, we also have a Mandarin

15     interpreter to interpret the --

16             THE COURT:  Okay.  If we're going to -- Mr.

17     Walsh --

18             THE INTERPRETER:  Yes, this is the interpreter.

19             THE COURT:  Okay, Mr. Walsh, are you admitted in

20     our district?

21             MR. WALSH:  I am not, Judge.  I did make efforts

22     early this morning to submit my pro hac vice and it kept

23     getting kicked back from PACER.  I am admitted in the

24     Southern District, I just have not had any cases in the

25     Eastern District, so I'm in the process of getting that done.

1          THE COURT:  Okay.  Well, as you might imagine, we

2     don't really care what happens in the Southern District of

3     New York.

4          MR. WALSH:  I --

5          THE COURT:  All right?

6          MR. WALSH:  I just wanted to let you know I'm -- I

7     have -- I've been admitted close to where you are.

8          THE COURT:  The Southern District of New York might

9     as well be the Eastern District of Wisconsin, but I'll admit

10    you pro hac vice for the purposes of today's conference and

11    ask that you remedy your pro hac vice status as soon as -- as

12    soon as possible, given the technological difficulties.

13         MR. WALSH:  I will take care of that if not later

14    today, first thing in the morning on Monday.

15         THE COURT:  Okay.  So if we're going to have the --

16    does your client need translation of -- into Mandarin?

17         MR. WALSH:  Probably, Judge.  Do we want to redo

18    this so he can hear that?

19         THE COURT:  Well, no, I was just -- so I'm going to

20    have to speak with the translator.

21         MR. WALSH:  Okay.

22         THE COURT:  Ma'am, on the phone.

23         THE INTERPRETER:  Yes, Your Honor.

24         THE DEFENDANT:  Yes, Your Honor.

25         THE INTERPRETER:  Yes?  Yes?  Hello?  Hello?

4

1          MR. WALSH:  Yes, the judge would like to speak to

2     you.

3          THE INTERPRETER:  Yes.

4          THE COURT:  Okay.  I'm trying to figure out the

5     best way for you to translate.  I am happy to direct everyone

6     to pause so that you can translate after each sentence or

7     couple of sentences.

8          THE INTERPRETER:  Yes, I think that so far what

9     I've been doing is to start interpreting after each Q and A.

10    So I will catch up now with your Q and A with Mr. Walsh.

11         THE COURT:  Okay, great.

12         THE INTERPRETER:  Okay.

13         THE COURT:  Okay.  Mr. Kuang, you can see and hear

14    me?

15         THE DEFENDANT:  Yes, I can hear you.

16         THE COURT:  And can you see me, sir?

17         THE DEFENDANT:  Yes.  Yes.

18         THE COURT:  Okay.  Mr. Kuang, the reason you're

19    here today is because you have been charged with certain

20    federal crimes, and those crimes are outlined in a document

21    called an indictment.  What I'm going to do today is explain

22    to you your rights and then determine what happens next in

23    your case.  Okay?

24         THE DEFENDANT:  Okay.

25         THE COURT:  So first, sir, you're understanding

5

1    these proceedings through a Mandarin language interpreter,

2    correct?

3                  THE DEFENDANT:  Yes.

4                  THE COURT:  Okay.  As I mentioned, you have certain

5    rights.  Your first right is your constitutional right to

6    remain silent.  What that means is, you don't have to make a

7    statement at any time.  You don't have to make a statement to

8    any law enforcement official.

9                  If you do make a statement, that statement can be

10   used against you, including in this case.  If you've made a

11   statement in the past, that statement -- you don't have to

12   make a statement in the future.

13                 Do you understand your right to remain silent, sir?

14                 THE DEFENDANT:  I do understand.

15                 THE COURT:  Okay.  Sir, you also have the right to

16   counsel, which is a right to a lawyer.  You have the right to

17   have a lawyer represent you from the time you're arrested, to

18   any trial and any appeal.  You have the right to have that

19   lawyer represent you in court and out of court, and during

20   questioning by law enforcement.  You have the right to a

21   lawyer of your own choosing.

22                 If you couldn't afford a lawyer, however, the court

23   would appoint a lawyer for you.  You also have a right to

24   represent yourself if that's what you wish to do.

25                 Do you understand your right to counsel, sir?

6

```
 1              THE DEFENDANT:  I understand.
 2              THE COURT:  Okay.  And is Mr. Walsh your lawyer?
 3              THE DEFENDANT:  Correct.
 4              THE COURT:  Okay.  Mr. Walsh, have you explained to
 5      your client his right to conduct this proceeding in person,
 6      and does he waive any right he has to conduct an in-person
 7      arraignment and agree to proceed via video and telephone
 8      today?
 9              MR. WALSH:  Yes, Judge.  It was discussed with him
10      yesterday with us.
11              THE COURT:  And he waives whatever right he has to
12      in-person proceeding and agrees to proceed via videographic
13      and telephonic means?
14              MR. WALSH:  Yes.  He understood this would be done
15      remotely.
16              THE COURT:  And so he waives his rights to an in-
17      person proceeding?  That's the question.  I'm not going to
18      ask again.
19              MR. WALSH:  Yes, he does.
20              THE COURT:  Go ahead.
21              And, Mr. Walsh, you received a copy of the
22      indictment tha been issued against your client and returned
23      against your client, and have you had an opportunity to
24      discuss that document with your client?
25              MR. WALSH:  Judge, I don't -- I'm aware of the
```

7

1    charges that are being lodged against him.  We discussed

2    those charges, but I've not actually seen a physical copy of

3    the indictment.  I'm aware of the charges based on

4    conversations with United States Attorney, and I have

5    discussed those with my client.

6              THE COURT:  Okay.  This is what's going to happen.

7    You actually need to take the indictment, read it yourself,

8    and then discuss the indictment with your client.

9              Mr. Haggans, to the extent Mr. Walsh doesn't have a

10   copy, if you need his email address you could kindly send it

11   to him.  I would like the Mandarin interpreter to stay on the

12   line, and then everybody else must get off the phone.  This

13   is a court order, and any -- everyone else must get off the

14   video.  The only person who is permitted on the video at this

15   point are the interpreter.

16             So Mr. Walsh and the only other person permitted on

17   the telephone is the Mandarin language interpreter and of

18   course the defendant.  Everybody else must get off the phone

19   and the video that the court ordered violation could lead you

20   to be held in contempt.

21             Mr. Walsh, I'm sure you've read the indictment, had

22   it, and you discussed the specific charges in it with your

23   client.  Please email Lewis, who arranged this video

24   conference, and then we will all rejoin and then we'll

25   proceed with the arraignment, okay?

8

1            MR. WALSH:  Judge, is that the gentleman who I've

2      been corresponding with earlier today?

3            THE COURT:  Yes.  Lewis Hugh.

4            THE CLERK:  Yes.  I'm here.  Judge, I will have to

5      stay on for this conference to be on.  I take it that's fine?

6            THE COURT:  Yeah, but you'll -- you can just turn

7      off your volume so you're not listening.

8            THE CLERK:  Yes.  Absolutely.

9            THE COURT:  All right.  Yes.  Thanks.

10            MR. WALSH:  Thank you, Judge.  And counsel was kind

11      enough to send that on to me now.

12            THE COURT:  Okay.  Great.

13          (Off the record from 2:20 p.m. to 2:43 p.m.)

14            THE CLERK:  We're now back on the record in 21-CR-

15      265, *USA v. Kuang Zebin*.

16            Counsel, please state your appearances, starting

17      with the government.

18            MR. HAGGANS:  Matthew Haggans for the United

19      States.

20            MR. WALSH:  Michael Walsh for Mr. Kuang.

21            THE COURT:  Okay.  Good afternoon.

22            Mr. Kuang, you can still see and hear me?

23            THE DEFENDANT:  Yeah.  I can see you and hear you.

24            THE COURT:  Okay.  Mr. Walsh, have you had an

25      opportunity to review the indictment and discuss it with your

9

1    client?

2            MR. WALSH:  Yes, I have, Your Honor, and I would

3    want to note that we'd switch from Mandarin to Cantonese for

4    translation.

5            THE COURT:  Okay.  And, Mr. Kuang, do you need me

6    to repeat anything that we did before the break and have it

7    done in Cantonese?

8            THE DEFENDANT:  It's not necessary.

9            THE COURT:  Okay.  Mr. Walsh, you reviewed the

10    indictment with the assistance of an interpreter with your

11    client?

12            MR. WALSH:  Yes, I did.

13            THE COURT:  Okay.  Okay.  And, Mr. Haggans, to

14    which counts is Mr. Kuang charged with in this indictment?

15            MR. HAGGANS:  Yes, Your Honor.  He's charged with

16    Counts 1 through 4.  Count 1 is conspiracy to act as an agent

17    of a foreign government without prior notification to the

18    Attorney General.  That's in violation of Title 18, United

19    States Code, Section 371.

20            Count 2 is the substantive offense of acting as an

21    agent of a foreign government without prior notification in

22    violation of Title 18 US Code Section 951(a).

23            Count 3 is conspiracy to engage in interstate

24    stalking in violation of Section 371.

25            And finally, Count 4 is the substantive offense,

1    stalking in violation of Section 2261(A)(1)(b).

2           THE COURT:  Okay.  And, Mr. Walsh, does your client

3    wish to have a public reading of the -- of the allegations

4    and the charges in the indictment against him?

5           MR. WALSH:  No, Your Honor, we'll waive that.

6           THE COURT:  The Court notes that Mr. Kuang waives

7    his right to a public reading of the charges in the

8    indictment.

9           Okay.  And, Mr. Walsh, how does your client plead

10    to the first four counts of the indictment?

11           MR. WALSH:  He pleads not guilty, Your Honor.

12           THE COURT:  Okay.  The Court notes that Mr. Kuang

13    is entering a plea of not guilty to Counts 1 through 4 in the

14    indictment.  I should say, to be specific, entering a plea of

15    not guilty to Counts 1 through 4 in the superceding

16    indictment.

17           And, Mr. Haggans, just so the record is clear,

18    because I inadvertently used the word indictment as opposed

19    to superceding indictment earlier, it is the superceding

20    indictment which I presume you provided to Mr. Walsh.

21           MR. HAGGANS:  That is correct, Your Honor.

22           MR. WALSH:  That is correct, Judge.

23           THE COURT:  All right, I'm -- okay.  At this point,

24    I'm going to -- pursuant to Federal Rule of Criminal

25    Procedure 5F, remind the government of it's obligations under

1    *Brady v. Maryland* and the cases that follow.

2          In those cases, the government is required to turn

3    over to the defendant, all information, whether it's

4    admissible or not, that's material to guilt or punishment,

5    and as -- or that is favorable to the defendant, and that is

6    known to the prosecution.

7          The prosecution must make good faith efforts to

8    disclose that information to the defendant as soon as

9    reasonably possible, and I'll be entering a written order

10   that more fully details this obligation and the consequences

11   of failing to abide by this obligation.

12         I'm directing the government to review this order

13   and comply with it.  Can the government confirm that it

14   understands its *Brady* obligations and will fulfill them?

15         MR. HAGGANS:  We do understand those obligations,

16   Your Honor, and we will fulfill them.

17         THE COURT:  Okay.  What is the government's

18   position with respect to bail?

19         MR. HAGGANS:  Thank you, Your Honor.  This -- as

20   the Court will have seen from the superceding indictment,

21   this is a serious case with serious allegations that the

22   defendant is facing.

23         That being said, the government has had the

24   opportunity to confer with defense counsel and to interview

25   the proposed suretors that the defense has proffered.  We've

12

1    also had the opportunity to consult with pretrial services,

2    and we're also conscious of the fact that Mr. Kuang is not

3    the first defendant to appear in this case for bond

4    proceedings.

5            And so, taking all of that information into

6    account, the government believes the defense has a proposed

7    bond package that is appropriate, and I am happy to run

8    through the government's understanding of that in brief,

9    although I think it may make more sense for the defense to

10   propose that package to Your Honor.

11           I'll pause for the interpreter.

12           THE COURT:  Mr. Haggans, I have a bond that has the

13   proposed condition, which I think captures the proposed

14   conditions.  I will -- just for the ease of efficiency, I

15   will read those in a moment and make sure Mr. Walsh and you

16   are on agreement about those.

17           I do have some questions, though, about a couple of

18   what I think are the agreed upon provisions, so let me just

19   start there and I'll let translation to occur after I the

20   first question.

21           There's a -- there's a statement made, no-contact

22   provision, namely that there's no contact with the victims or

23   witnesses.  I note the charges here include stalking and the

24   superceding indictment refers to John Doe 1 and Jane Doe 1

25   and Jane Doe 2.

1          And while I'm not suggesting that you say out loud

2    on the proceeding the identity of those persons, but to the

3    extent that there's some reason -- you know, I don't want Mr.

4    Kuang to inadvertently run afoul of that no-contact provision

5    if he doesn't know who those people are.

6          And so, I don't know if you want to say anything on

7    this or what provisions you're able to make, even if it's a

8    call to Mr. Walsh to indicate who those individuals are.

9          I'll let translation occur before you respond.

10         MR. HAGGANS:  Thank you, Your Honor.  Based upon

11   what the government knows about the victims and their status

12   and the conditions of the proposed bond, in particular the

13   location restrictions, the government has fairly high

14   confidence that we're not going to have inadvertent, whether

15   accidental or purposeful, contact in this case.

16         THE COURT:  Okay.  And the other question I have

17   about -- is there a condition that the government is

18   proposing and defendants have agreed to, about Mr. Kuang's

19   ability to enter Manhattan?

20         MR. HAGGANS:  Yes, Your Honor.  The government

21   respectfully requests that the bond preclude him from

22   entering Manhattan.  The basis of that condition is that

23   there are diplomatic facilities of the People's Republic of

24   China located in Manhattan.

25         Those facilities are, as a legal matter under

1    principles of international law, the sovereign territory of

2    that government, and so the government believes there's a

3    risk that were he to enter Manhattan there could be a

4    misunderstanding that he was headed for one of those

5    facilities.

6             The government obviously does not wish for him

7    enter one of those facilities and then be essentially beyond

8    the power of the government to place him into custody or the

9    Court to issue a warrant for his arrest that could be

10   executed.  That's why Manhattan is excluded.

11            THE COURT:  Okay.  Mr. Haggans, I think the last

12   one, and it's sort of a combination question, is there --

13   there is a curfew restriction as directed by Pretrial

14   Services, and is there a limit to that or any of the other

15   conditions, any kind of location monitoring or anything like

16   that being proposed?  Or is it just the travel restriction

17   and the curfew?

18            MR. HAGGANS:  It's the travel restriction and the

19   curfew, Your Honor.  And we -- I believe the proposed bond

20   has that -- the time period of that curfew at the discretion

21   of Pretrial Services to give them flexibility.

22            THE COURT:  Okay.

23            MS. CARTER:  Your Honor, Bianca Carter here.

24            THE COURT:  Yes.

25            MS. CARTER:  Just to clarify, the court is

1    instituting the curfew with location monitoring.  Is that

2    still the way we monitor a curfew?

3         THE COURT:  Okay.  In other words, it requires an

4    ankle bracelet to monitor the curfew.

5         MS. CARTER:  Correct, Your Honor.

6         THE COURT:  Okay.  All right.  Let me -- let me

7    then -- anything else, because I'm going to read through the

8    conditions to make sure that the government and counsel for

9    Mr. Kuang are in agreement, and then I will explain them to

10    the defendant.

11         I'll let translation occur.

12       (Pause for translation)

13         THE COURT:  Okay.  I understand the bond that's

14    being proposed as follows.  It is a $45,000 bond that's

15    signed on to by Mr. Kuang and two suretors, Zen Wa Lin (ph)

16    and Yung Ku Kuang (ph).  It provides a location restriction

17    that's limited to the defendant not traveling to New York --

18    outside of New York City, Long Island, but also, he can't

19    enter Manhattan.

20         There's a no-contact provision with witnesses, co-

21    defendants, (indiscernible), or victims.  There's a passport

22    surrender.  There's the regular conditions of Pretrial

23    Services supervision.  There's a curfew that's monitored by

24    location monitoring.  The location monitoring is to be paid

25    for by the defendant, consistent with his ability to pay, and

1    then there are the standard conditions of release, which --

2    and the standard consequences, all of which I'll go into

3    detail with Mr. Kuang.

4                 Mr. Haggans, is that correct?

5                 MR. HAGGANS:  Yes, Your Honor, that's correct.

6                 THE COURT:  Okay.  Mr. Walsh, is that consistent

7    with your understanding and agreement?

8                 MR. WALSH:  Yes, it is, Your Honor.

9                 THE COURT:  Okay.  Great.  In light of the parties'

10   agreement to the bail package and in light of the

11   recommendation of Pretrial Services, I'm going to release Mr.

12   Kuang on bail on these conditions which I find ameliorate the

13   risk of flight that exists in the case.  I'm going to explain

14   those conditions to him and the consequences, after I swear

15   in the suretors and talk with them.

16                 I'll let translation occur first.

17        (Pause for translation)

18                 THE COURT:  Okay.  Do we have Zen Wa Lin on the

19   phone?

20                 MS. LIN:  Yes.

21                 THE COURT:  Okay.  Lewis, could you kindly swear in

22   the suretor, please?

23                 THE CLERK:  Yes.  Zen Wa Lin, please raise your

24   right hand.

25        (Suretor sworn)

1    MS. LIN:  Yes, I am swearing that I will speak the

2  truth.

3    THE CLERK:  Okay.  Thank you.

4    THE COURT:  State your name for the record.

5    THE CLERK:  Sorry, Judge.

6    MS. LIN:  My name is Lin Zen Wa.

7    THE COURT:  Okay.  Ma'am, can you hear me?

8    MS. LIN:  Yes.

9    THE COURT:  Okay.  I am Judge Bulsara.  I'm going

10  to ask you some questions.

11    First, can you tell me what's your relationship to

12  Mr. Kuang?

13    MS. LIN:  I am his mother, so we have a mother and

14  son relationship.

15    THE COURT:  Okay.  And do you understand that he's

16  in court here today because he's been charged with serious

17  federal crimes?

18    MS. LIN:  I understand.

19    THE COURT:  Okay.  And do you understand that you

20  are being asked to sign on to what's known as a bond in

21  support of his release?

22    MS. LIN:  I understand.

23    THE COURT:  Okay.  And do you understand that I'm

24  prepared to release him on certain conditions and those

25  conditions -- he has to comply with them, and that if he

1  doesn't comply with them, there would be consequences to him,

2  but there would also be consequences to you, namely the

3  government could seek to collect up to $45,000 from you.

4            Do you understand that?

5            MS. LIN:  I understand that.

6            THE COURT:  Okay.  And, Mr. Walsh, is it proposed

7  that Mr. Kuang would be living with his mother during the

8  pendency of this case?

9            MR. WALSH:  That is correct, Your Honor.

10           THE COURT:  Okay.  And, ma'am, do you understand

11 that your son will be living with you while his case is

12 pending here in Brooklyn?

13           MS. LIN:  Yes, my son will be living with me.

14           THE COURT:  Okay.  And, ma'am, what do you do

15 (indiscernible)?

16           MS. LIN:  I am a home healthcare aide.

17           THE COURT:  Okay.  And what is your approximate

18 yearly income?

19           MS. LIN:  It's about 20 -- a little over 25,000 a

20 year.

21           THE COURT:  Okay.  So in light of the fact that

22 your son has been charged with serious crimes, and that he --

23 if he violates conditions, the financial consequences to you

24 personally, specifically, you'll be required to forfeit up to

25 $45,000.  Are you still willing to sign on to a bond in

1    support of his release?

2              MS. LIN:  Yes, I'm willing.

3              THE COURT:  Okay.  Thank you so much.  My last

4    question for you is, I have a document here that's called a

5    bond.  It let -- it sets forth the obligations that I just

6    laid out to you.  It also lists the conditions upon which I'm

7    releasing your son.

8              Do I have your permission to put an electronic

9    signature -- your electronic signature on the document?  What

10   that is, is just spelling out in capital letters, your name.

11   You will receive a copy of this document, as will your son,

12   as will -- and his lawyer.

13             MS. LIN:  I agree to that.

14             THE COURT:  Okay.  Thank you.  Is the second

15   suretor on, Yung Ku Kuang?

16             MS. KUANG:  I'm here.  I'm here.

17             THE COURT:  Okay.  Lewis, can you kindly swear in

18   the second suretor, please?

19             THE CLERK:  Will do, Judge.

20             Yung Ku Kuang, please raise your right hand.

21        (The suretor sworn)

22             MS. KUANG:  Yes, I will be speaking the truth.

23             THE COURT:  Please state your name for the record.

24   Please state your name for the record, yeah.

25             MS. KUANG:  Yung Ku Kuang.

20

```
 1              THE COURT:  Thank you.

 2              MS. KUANG:  Yung Ku Kuang.

 3              THE COURT:  Okay.  Yung Kuang, this -- I'm Judge

 4    Bulsara.  Can you hear me?

 5              MS. KUANG:  Yes.

 6              THE COURT:  Okay.  And can you tell me what your

 7    relationship is to Mr. Kuang?

 8              MS. KUANG:  He is my nephew.  I am his aunt.

 9              THE COURT:  Okay.  And, ma'am, how often do you see

10    or speak to him?

11              MS. KUANG:  Yes, sir.  He wants -- if he wants to

12    ask me about something, he will call me.

13              THE COURT:  Okay.  So do you speak to him on a

14    regular basis?

15              MS. KUANG:  Yes.

16              THE COURT:  Okay.  And, ma'am, what do you do for a

17    living?

18              MS. KUANG:  I am a home health aide.

19              THE COURT:  Okay.  And what is your approximate

20    yearly income?

21              MS. KUANG:  23,000.

22              THE COURT:  Okay.  And do you understand that your

23    nephew has been charged with serious federal crimes and

24    that's what's brought him to court here today?

25              MS. KUANG:  I understand.
```

```
 1                    THE COURT:  Okay.  And do you understand that you

 2        are being asked to sign on to a bond in support of his

 3        release in the amount of $45,000?

 4                    MS. KUANG:  I understand that.

 5                    THE COURT:  Okay.  And do you understand that I'm

 6        prepared to release him on certain conditions, and that if he

 7        violates condition, those conditions, there will be

 8        consequences not only to him, but to you personally.

 9        Specifically, the government would impose a financial penalty

10        on you, would seek to collect up to $45,000 from you.

11                    Do you understand that?

12                    MS. KUANG:  I understand.

13                    THE COURT:  Okay.  And in light of the consequences

14        that would fall upon you financial if he were to violate

15        those conditions, and given the seriousness of the offenses

16        he's been charged with, are you still willing to sign on to

17        the bond in support of his release?

18                    MS. KUANG:  Yes.

19                    THE COURT:  Okay.  I have a document that's called

20        a bond in front of me.  It lays forth the conditions I've

21        explained to you of your option.  It also sets forth the

22        conditions upon which your nephew is being released.  There

23        is a place for your name to be signed.

24                    Do I have your permission to put a computer

25        signature on there?  What that is, is just your name in
```

22

1    capital letters and you of course will be given a copy of

2    this document, as will your nephew and his lawyer.

3              Do I have your permission to put that kind of

4    electronic signature on the documents?

5              MS. KUANG:  Yes.  Okay.

6              THE COURT:  All right.  Okay.  I find both suretors

7    understand their obligations, that they're appropriate

8    suretors, they can -- I will sign based on their consent, the

9    bond.

10             Okay.  Mr. Kuang, can you see and hear me again?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Okay.  I'm going to explain the -- in

13   order for me to release you, I'm going to make sure you

14   understand the conditions upon which you're being released

15   and the consequences of violating those conditions.  If you

16   have any questions, just let me know, okay?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  You're subject to a travel

19   restriction.  What that means is you cannot travel outside of

20   New York City or Long Island, and you are not permitted to

21   enter Manhattan.

22             In addition -- go ahead.

23        (Pause for translation)

24             THE COURT:  In addition, you have to give up any

25   passports that you have if you haven't done so already, and

23

1    you may not apply for any other travel documents.

2              You also are subject to a contact -- a no-contact

3    provision, which means you cannot speak to anyone who's also

4    a defendant in your case, anyone who might be a co-

5    conspirator, a victim, a witness, or a potential witness, and

6    you can only speak with someone who's a defendant in the

7    presence of your counsel, your lawyer.

8              If you don't know whether you can contact someone

9    or not, you should ask your lawyer.  This is not the kind of

10   provision for which you will receive forgiveness.  It is a

11   provision for which you must seek permission to speak to

12   someone.  If you have any doubt, ask your lawyer as to

13   whether or not you're permitted to speak, talk, or meet with

14   somebody.

15             In addition to the supervision of Pretrial

16   Services, what that means is they can visit you randomly at

17   your home or if you are working at your place of work.  They

18   can ask you to report to them at a place or time of their

19   choosing, either in person or via telephone, and you must

20   abide by those requirements and meet with them as directed.

21             In addition, you're going to be subject to a curfew

22   that -- which means you have to be back at home at ceratin

23   hours.  They will determine what those hours are, and in

24   order for you to comply with those, that curfew, they will

25   have an ankle monitor on you, and that's a monitor that you

24

1      will have to pay for depending upon your financial ability.

2              You're also subject to what are known as the

3      standard conditions.  Those apply to anyone who's released on

4      bond from this court.  Those conditions are as follows.

5          First, I understand that you will be living with your

6      mother.  You can't change your phone number or your address

7      unless you inform everyone on this phone call in writing.

8      Who is that?  That's the Court; that's Pretrial Services;

9      that's the government; that's your lawyer.

10             Okay.  You are also not permitted to have a firearm

11     or weapon or other destructive device.  You also cannot

12     possess any narcotic drug or controlled substance unless you

13     have a doctor's permission to do so.

14             And you may not violate federal law, any state law,

15     or any local law.  Do you understand these conditions, sir?

16             THE DEFENDANT:  Yes, I do understand.

17             THE COURT:  Okay.  Do you have any questions about

18     these conditions?

19             THE DEFENDANT:  No.

20             THE COURT:  Okay.  Let me explain to you what the

21     consequences are of violating any of these conditions.  If

22     you violate any of these conditions or don't show up to

23     court, you could be charged with a federal crime of bail

24     jumping.  If you violate any of these conditions or don't

25     show up to court, I or another judge will issue an arrest

25

1    warrant, you will be arrested, and you will be held until

2    your case concludes.

3            In addition, there's a no-contact provision as I

4    mentioned.  It is a federal crime to interfere with any

5    victim or witness in your case.  Also, I mentioned you can't

6    violate any federal law or any state law.  If you committed

7    another crime, you would be subject to three different

8    prosecutions.

9            First, you'd be prosecuted for this case which has

10   brought you here to federal court today.

11           Second, you'd be prosecuted for any other crime you

12   commit.

13           Third, it is a separate and independent federal

14   offense to commit a crime while out on bail.  If you break

15   that last crime and you are sentenced, the sentence to that

16   must come after.  It runs consecutive to any sentence you

17   might receive in this case.

18           Finally, and significantly, you, your mother, and

19   your aunt are signing on to a bond in the amount of $45,000.

20   They strike me as very hardworking people, your family

21   members.

22           Should you violate a condition or not show up to

23   court, you would be placing them in financial jeopardy, as

24   well as yourself, because the government would seek to

25   collect up to $45,000.

26

1        Do you understand each of these consequences, sir?

2        THE DEFENDANT:  I do.  I do.

3        THE COURT:  And do you have any questions at all

4   about either the conditions or the consequences as I've

5   explained them to you?

6        THE DEFENDANT:  When do I start wearing the

7   monitoring devices?  Is it starting now?

8        THE COURT:  Yes, I believe --

9        MR. WALSH:  Yes.

10       THE COURT:  -- Pretrial Services will fit you with

11  a monitor today.

12       THE DEFENDANT:  Okay.

13       THE COURT:  Okay.  Any other questions, sir?

14       THE DEFENDANT:  No.

15       THE COURT:  Okay.  Mr. Haggans, do you believe --

16  well, I'm sorry.

17       Mr. Kuang, I have a bond which is -- lays out all

18  of these conditions that I just explained to you.  Do I have

19  your permission to put an electronic signature -- your

20  electronic signature on the document which spells out your

21  name and says that you've signed with the Court's -- I've

22  signed it on your behalf, based on your permission?

23       THE DEFENDANT:  Please.  Thank you.

24       THE COURT:  Okay.  I have signed it.  I find that

25  the -- Mr. Kuang understands the nature of his obligations

1    and the consequences of violating his obligation, and

2    therefore, I am signing the bond and permitting his release.

3              Mr. Haggans, I want to make sure -- do you think

4    there's any other colloquy that's necessary with him?

5              MR. HAGGANS:  As to the bond, no, Your Honor.

6              THE COURT:  Okay.  Mr. Walsh?

7              MR. WALSH:  No, Your Honor.

8              THE COURT:  Okay.  Mr. Haggans, anything else at

9    this point?

10             MR. HAGGANS:  I have just a handful of matters for

11   the record.  Perhaps we should let the translation, and then

12   I'll do those.

13             THE COURT:  Okay.

14             MR. HAGGANS:  The Court made reference to the

15   defendant's passport, and we are advised that has been

16   surrendered to Pretrial Services.

17             The Government has also -- go ahead.

18        (Pause for translation)

19             MR. HAGGANS:  The Government has also made consular

20   notice as required.

21             And finally, I just wanted to note for all's

22   attention, the next court date in this matter is scheduled

23   for September 27th at 11:00 a.m. before the presiding

24   district judge, Judge Chen.  It's anticipated at this time

25   that that will be an in-person proceeding.

1          That's it from the Government.  Thank you, Your

2    Honor.

3          THE COURT:  Okay.  Mr. Walsh, anything from you?

4          MR. WALSH:  No, Your Honor.

5          THE COURT:  Okay.  I wish you all continued good

6    health and have a nice day.

7          MR. WALSH:  Thank you.

8          MR. HAGGANS:  Thank you, Your Honor.  Have a good

9    weekend.

10      (Proceedings concluded at 3:40 p.m.)

11     I, CHRISTINE FIORE, Certified Electronic Court Reporter

12   and Transcriber, certify that the foregoing is a correct

13   transcript from the official electronic sound recording of

14   the proceedings in the above-entitled matter.

15

16

17   _Christine Fiore_

18   _____        September 1, 2021

19      Christine Fiore, CERT

20

21

22

23

24